JUAN VÁZQUEZ ROSARIO ET AL., Plaintiffs and Appellees, *v.* THE PEOPLE OF PUERTO RICO, Defendant and Appellant.

No. 11082. Argued April 1, 1954.—Decided May 25, 1954.

*José Trías Monge, Attorney General,* and *José Antonio Arabía,*
*Assistant Attorney General,* for appellant. *Bolívar Pagán,*
for appellees.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

This is an appeal from a claim for damages against The
People of Puerto Rico arising from an accident in which
a vehicle of the fire department ran over Jovino Vázquez
Rosario, known also as Jovino Rosario, killing him. The
claim is made under authority of a special law. When the
accident occurred, the vehicle was being driven by Santiago
Rodríguez Medina, a fireman or agent of the defendant.
Sitting beside him was Rosario Rosario, also an agent of
the defendant, who was precisely the person authorized by
the latter to drive the vehicle. When the accident occurred
in Juncos on July 29, 1947, about ten o'clock, the truck was
returning to the fire-department office in Juncos from having
its tank filled with gasoline and "warming up" the vehicle.
There is no doubt that when the accident occurred the vehi-
cle was being operated for the protection of the employer's
interest. After a hearing of the case on the merits, the
San Juan court rendered judgment sustaining the complaint
and ordering defendant to pay to plaintiffs the sum of
$10,000, of which Ramona Peña widow of Jovino Vázquez,
would receive $8,000, and the other plaintiffs, brothers of
Jovino Vázquez, $500 each for their "mental anguish" and
the loss of companionship of their brother.

The defendant appealed to this Court assigning two
errors. The first assignment charges that the lower court
erred "in deciding that chauffeur Rosario Rosario Rodríguez
was discharging his duties as employee of the fire depart-

ment when the accident occurred, thereby holding defendant-appellant liable for the chauffeur's fault and consequently, rendering judgment for plaintiffs."

■■ According to the findings of fact made by the trial court, which have not been challenged, Rosario Rosario was the person authorized by defendant to drive the vehicle, but when the accident occurred the vehicle was being operated by Santiago Rodríguez, a fire-department employee, without authority or a license to drive vehicles. There was uncontroverted evidence that the fire-department administration had issued specific orders prohibiting the operation of fire-department vehicles by employees other than those expressly authorized to do so. Therefore, Santiago Rodríguez not only had no license to drive the vehicle in question but was also violating the specific orders of the defendant employer. This notwithstanding, Rosario Rosario, the duly authorized driver, was riding next to Santiago Rodríguez in the same vehicle involved in the accident. According to the findings of fact of the lower court and the evidence presented, the accident was not due to any act or omission on the part of Santiago Rodríguez who was without authority to drive, but by an act of Rosario Rosario. The lower court found as follows:

"Although it is true that when the accident occurred he (Santiago Rodríguez Medina) was in the driver's seat and next to him was chauffeur Rosario Rosario Rodríguez, it is no less true that Rosario took hold of the wheel and tried to apply the brakes, but instead put his foot on the accelerator and ran over Jovino Vázquez Rosario, inflicting the injuries which caused his death."

The lower court held defendant liable not as a result of any negligence on the part of Santiago Rodríguez, the unauthorized driver, but on the part of Rosario Rosario. The appellant contends that Rosario failed to discharge the duties of his employment by permitting Santiago Rodríguez

to take the wheel, in disobedience of his employer's specific orders. There is some conflict of authority as to the liability of an employer for the negligent operation of a vehicle by one who was permitted by the employer's agent to drive it in violation of the specific and express orders of the employer not to allow others to operate the vehicle (5 Am. Jur. 720, § 382, and annotations in 44 A.L.R. 1383, 54 A.L.R. 852, 98 A.L.R. 1044, 134 A.L.R. 978). The authorities holding that there is no liability under such circumstances rely on the theory that the third party does not act within the scope of the employer's authorization and that any possible negligence of the authorized agent in permitting another to operate the car is not attributable to the employer, who was already prohibited such permission to third parties, and furthermore, any negligence of the employer could not be predicated on the lack of adequate supervision and control of the third party's conduct or on negligence in the selection of an unauthorized driver. On the other hand, there are authorities which hold the employer liable on the theory that, essentially, the vehicle has been used in defense and protection of the employer's interests when the accident occurred, irrespective of the driver's identity, and the fact itself of the disobedience of the employer's specific orders might be a relevant factor, but it is not necessarily controlling.

In *Usera* v. *González*, 74 P.R.R. 454, it was held that an automobile salesman, authorized by his employer to permit a prospective purchaser to take a car out and test it, is negligent in giving such purchaser a car without first inquiring whether he has a driver's license and such negligence is attributable to his employer. That case is not necessarily applicable to the case at bar, for in *Usera* v. *González* the employer authorized the agent to intrust the custody of the car to a third party.

The weight of authority supports the theory that, where the act is done in violation of the employer's specific orders

in permitting another to operate the car, the employer is liable if the authorized driver rides in the same car beside the third party, for in that case the employer's presence in the vehicle is implied, the third party is considered as the alter ego of the authorized agent who retains custody of the vehicle in representation of the employer, and the authorized driver's negligence in choosing as driver a third incompetent party and in not properly supervising or controlling his conduct, is attributable to the employer (5 Am. Jur. 721, § 383; 134 A.L.R. 978; *Restatement of the Law of Agency*, § 241 pp. 542–544).

In the case at bar we need not pass upon the question raised by appellant and discussed by us since, as found by the lower court, the accident was not due to any negligence of Santos Rodríguez, the third party without authority to drive the car but was caused by the negligence of Rosario Rosario himself, the authorized driver who rode beside Santiago Rodríguez. According to the evidence and the findings of fact of the trial court, Rodríguez was driving the car along a street in Juncos on an "employer's" trip, namely, to protect the employer's interests. When he reached an intersection, Rodríguez intended to proceed, but Rosario suddenly took hold of the wheel and attempted to turn the vehicle at the intersection in the direction of another street. Just then Rosario put the foot on the accelerator instead of applying the brakes and, as a result of Rosario's negligent act, the vehicle ran over Jovino Vázquez killing him. Therefore, the fact itself that the car was being driven by an unauthorized third party was not the cause of the accident. The cause of the accident was the negligence of defendant's agent, who had express authority to operate the vehicle. The first error was not committed.

It is alleged in the second assignment that appellant awarded compensation to the deceased's brother, solely for mental suffering or anguish and the loss of companionship.

Appellant alleges that pecuniary damages are recoverable in an action for death, but that, in the absence of such pecuniary damages, damages for mental suffering are not recoverable separately. There is no showing in the instant case that coplaintiffs, the deceased's brothers, sustained pecuniary damages.

 In *Travieso* v. *Del Toro*, 74 P.R.R. 940, we held that the basic source for awarding damages for death is § 1802 of the Civil Code, and that the right of action for death is not part of the hereditary patrimony of the ancestor, but that it is a cause of personal action of all those persons who suffer damages as a result of another person's death. Reference was made in the context of that case to pecuniary damages, the existence of which was established. It was also held that damages for mental suffering were recoverable jointly with the sums recoverable for pecuniary damages. But the case at bar is the first of its kind to come up before this Court, claiming damages for mental suffering caused solely by the death of a person, but not pecuniary damages.

In *Rivera* v. *Rossi*, 64 P.R.R. 683, this Court rendered an altogether orientative opinion, and speaking through former Chief Justice Ángel R. de Jesús, held that in an action for wrongful attachment plaintiff is entitled to recover damages exclusively for mental pain and suffering even though they are not accompanied by physical injury. That case did not involve an action for death, but the grounds adduced and the arguments offered are altogether applicable to the question now before us. We now ratify what was said in *Rivera* v. *Rossi*, *supra*, to wit:

(1) The action for damages in that case is based on § 1802 of the Civil Code. The same applies to the action for death.

(2) Section 1802 provides that "a person who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done."

The broad and general terms of that Section permit the reparation of damages caused by moral damages or mental suffering exclusively, since no distinction is made between physical and moral damages; and if the moral damages are the natural consequence of the fault or negligence of the defendant, that is to say, if they are actually caused by such fault or negligence, they should be recoverable, especially in view of the fact that mental suffering is in many instances as important or more important than the physical or pecuniary damages.

(3) The civil-law commentators and authorities which were amply discussed in *Rivera* v. *Rossi*, are agreed on the theory that damages for mental anguish are recoverable irrespective of physical or pecuniary damages.

(4) The common-law doctrine, which requires that there must be an "impact" before moral or mental damages can be recovered, is subject to criticism as being contrary to the rule on the recovery of damages caused by negligence. Such restrictive doctrine is obsolete and fails to protect an important interest of the human personality, and is being repudiated by the American courts.

(5) The fact that the rule which permits compensation for moral damages exclusively might open the door to fraudulent, fictitious or simulated claims, should be no argument for implying the nonobservance of the broad and general terms of § 1802. " . . . the courts should not deny compensation for damages really suffered simply to avoid an increase of suits. Neither should they deny a remedy to one who deserves it merely because a number of claims may be false. False claims are common in all branches of justice and it is the business of the courts to distinguish between genuine claims and false ones. . . . We concede that the damages to the feelings as the ones in the present case are not subject to an exact compensation, but that same reason could be adduced whenever physical damages

and damages to the feelings are claimed." *Rivera* v. *Rossi, supra*, pp. 690, 691. Supplementing what was said in that case, it is well to point out that in Colin y Capitant, Vol. 6, p. 817, it is stated that "undoubtedly there is some basis for this criticism. But it might seem even stranger that no reparation would compensate the loss. If the discretion of the judge is always a risk, the negation of all sanction for the damage suffered as a result of the act of another would be a dire injustice." See also Planiol y Ripert, Vol. 6, p. 758, and Colombo, *Culpa Aquiliana*, p. 758.

The case of *Rivera* v. *Rossi, supra*, was ratified in *Muriel* v. *Suazo*, 72 P.R.R. 348.

The doctrine announced in *Rivera* v. *Rossi, supra*, on the validity of an indemnity for damages or mental anguish exclusively, independently of pecuniary and physical damages, under § 1802 of the Civil Code, also applies to actions for death caused by fault or negligence, since such action is governed by § 1802 (Colin y Capitant, Vol. 3, p. 817; Planiol y Ripert, Vol. 6, pp. 890 and 760, § 549).

In a judgment of the Supreme Court of Spain rendered on May 19, 1934, in which a mother claimed damages for the death of her daughter resulting from the negligent operation of a car, it was held that in case of death the nature of the damages to be indemnified is determined by § 1902 of the Spanish Civil Code (1802 of ours) and not especially by § 1106 (1059 of ours), which provides that indemnity for damages includes not only the amount of the loss which may have been suffered, but also that of the profit which the creditor may have failed to realize. It was held that damages are recoverable for loss *of life* or honor, even though they have no material and tangible value, for where the loss of life and honor is involved the value cannot be estimated altogether by objective proof, in which case the trial court should fix a reasonable amount for damages, commensurate with the circumstances of the aggrieved

party. The same doctrine, which requires no showing of material damages in case of death, is sanctioned in the judgment of May 24, 1947 of the Supreme Court of Spain, in which it is stated as follows:

" . . . where life and honor is involved, a material assessment of damages cannot be made, wherefore the assessment is left to the discretion of the trier. For that reason, plaintiff confined himself to his burden: to prove the fact. The reality of this is unquestionable. From it there necessarily arises also the reality of the damage. There is no doubt that the father who suffers a misfortune, as did appellant, sustains a real and effective damage. Its importance will depend on the circumstances of age, status, wealth, etc., which may contribute to mitigate it but not to determine its existence or nonexistence, and to wipe it out altogether."

■ There arises a question on the identity of the persons who may claim indemnity for mental suffering exclusively, that is to say, whether such right should be limited to the deceased's relatives who presumptively suffer such mental anguish, or whether it should cover those persons who, having no relationship to the deceased, prove to the judge the existence of the damage and their suffering or anguish, relying on the terms of § 1802 (Cf. Colin y Capitant, Vol. 3, p. 817; Planiol y Ripert, Vol. 6, p. 760). We need not decide that dilemma in the case at bar, since decedent's brothers and sisters, plaintiffs herein, fall in the evidently permissible category of those persons who are relatives of the deceased and who presumptively suffer moral or mental anguish by the death of their relative. Therefore, the trial court acted correctly in awarding compensation to the deceased's brothers.

The judgment appealed from will be affirmed.

Mr. Chief Justice Snyder was absent when the judgment was signed but he participated in the discussion of the case and concurs in the result.